BETHESDA HOSPITAL AND DEACONESS ASSOCIATION, APPELLANT, *v.* CITY OF MONTGOMERY, APPELLEE.

(No. C-840662 — Decided July 31, 1985.)

Taft, Stettinius & Hollister and Lawrence D. Walker, for appellant.

Wood & Lamping, Richard B. Dusterberg and Craig A. Hayden, for appellee.

BLACK, P.J. The issue in this appeal is whether the zoning ordinance of the city of Montgomery prohibits the construction and use of a facility for the treatment of alcoholism and dependency on related drugs (herein, "the alcoholic center"). The trial court held that the construction and use were prohibited. We reverse that judgment, because we believe that the zoning ordinance, properly interpreted, does not prohibit the construction of the facility. The hospital is entitled to judgment in its favor as a matter of law, and we render the judgment the trial court should have rendered. App. R. 12(B).

I

The facts are not in dispute. Bethesda Hospital and Deaconess Association (name changed in 1983 to "Bethesda Hospital, Inc." and herein referred to simply as "Bethesda") is an Ohio non-profit corporation that owns and operates two hospitals within Hamilton County. One hospital, known as "Bethesda Base" or "Bethesda Oak Hospital," is located in Cincinnati, and the other is located in the city of Montgomery, and known as "Bethesda North Hospital."

In 1965, Bethesda purchased eighty acres in the city of Montgomery for the establishment of Bethesda North Hospital. In 1967, Montgomery amended its zoning ordinance (which had been enacted in October 1958 and was known as Ordinance No. 475) by adopting "Ordinance 5, 1967" creating an "H" Hospital District where there had been none before. Section 2 of Ordinance 5, 1967 is the focal point of this litigation, and it reads in full[1]:

"SECTION 2. USES WITHIN 'H' HOSPITAL USE DISTRICT

"A. Only the following uses of lands and structures shall be authorized and permitted within the 'H' Hospital Use District:

"(a)  General Hospital Services
"(b)  Out-patient Care Services
"(c)  Extended Care Services
"(d)  Health Related Care Services
"(e)  Residence and Education

---

[1] These provisions remain in effect. Montgomery "codified" its ordinances in 1976, and Chapter 151 contains the Zoning Code. All special zones created prior to 1976 were incorporated in the Zoning Code, including the "H" Hospital District created under Ordinance 5, 1967, and referred to in Section 151.29(B). Section 151.29(C) reads:

"Nothing contained in this section or in §151.26 shall be construed as an enlargement or diminution of the regulations, restrictions or concessions imposed or granted in the ordinances set forth in paragraph (B) of this section. Designation as a 'PD' planned development district pursuant to this section shall be construed as a change of title only and all substantive provisions of the ordinances set forth in paragraph (B) shall apply to the properties so zoned."

Therefore, Section 2 of Ordinance 5, 1967 contains the language that must be interpreted in this litigation.

Buildings for Students, Nurses, Interns, and Medical Residents

"(f) Medical Office Buildings

"(g) Residences for Key Personnel provided that Key Personnel shall not include any number of personnel in excess of 1% of the employees of said hospital

"(h) Retail outlets dealing primarily with pharmaceuticals, drugs, medicines, healing apparatus and equipment, and other items provided primarily for the benefit of staff, patients, their families and visitors, provided that such retail outlet shall be in a building the primary use of which is one of the other permitted uses

"(i) Services necessarily incidental for the proper functioning, operating and maintaining of any of the foregoing uses

"(j) Parking

"B. Notwithstanding the generality of any of the foregoing permitted uses, the following use is expressly prohibited:

"Institutions primarily for the care of drug addicts, feebleminded, or insane, and alcoholics."

After 1967, Bethesda constructed, and now operates, a comprehensive medical-surgical hospital with a capacity of two hundred seventy-one beds, housed in five separate buildings.

The proposed alcoholic center will add one more freestanding building with sixty beds, thus representing a sixteen percent increase in the number of buildings and an eighteen percent increase in bed capacity. The center will be used for the treatment and care of adults and adolescents suffering alcoholism and dependency on drugs with similar effects; it is not designed or intended to treat addiction to so-called hard or street drugs such as cocaine, heroin and the like. The question is whether the alcoholic center is prohibited by Montgomery's zoning laws.

Pursuant to R.C. 3702.51 *et seq.*, Bethesda applied to the Ohio State Health Planning and Development Agency ("SHPDA") for a certificate of need ("CON") for the alcoholic center. A CON is required before the proposed construction can begin. Bethesda's application was granted, and a CON was issued. SHPDA later extended, renewed and again extended the CON so that Bethesda had the requisite permission until after the final judgment below.

## II

On January 20, 1983, Bethesda filed its complaint asking for a declaratory judgment interpreting Ordinance 5, 1967. The complaint asserts that the ordinance does not prohibit construction of the alcoholic center, for three reasons: (Count I) the correct interpretation of the ordinance does not prohibit this construction; (Count II) if it does, the ordinance is in conflict with the CON, issued under state law, and the ordinance is therefore void and invalid under Section 3, Article XVIII of the Ohio Constitution; and (Count III) the ordinance is unconstitutional under Sections 2, 16, and 19, Article I, of the Ohio Constitution, because it is arbitrary, discriminatory, confiscatory and unreasonable.[2] Both parties moved for partial summary judgment under Counts I and II,[3] and the trial court entered final

---

[2] We believe the record amply demonstrates that an actual controversy or justiciable issue exists between Bethesda and Montgomery despite the absence of an official refusal by Montgomery, such as a refusal to issue a zoning certificate or a building permit. The record is clear that Bethesda's rights to build and operate the alcoholic center are affected by Ordinance 5, 1967 and Montgomery's interpretation of that ordinance. *Wilson* v. *Cincinnati* (1960), 171 Ohio St. 104 [12 O.O. 2d 129].

[3] While we fail to find in the record any

judgment[4] in favor of Montgomery and against Bethesda under these two counts, having determined under Civ. R. 54(B) that there was no just reason for delay.

On appeal, Bethesda presents four assignments of error: (1) error in granting Montgomery's motion for summary judgment on Count I; (2) error in denying Bethesda's motion on Count I; (3) error in granting Montgomery's motion on Count II; and (4) error in denying Bethesda's motion on Count II. We sustain the first and second assignments of error and overrule the third and fourth.[5]

### III

Count I presents the issue whether the prohibition against "[i]nstitutions primarily for the care of * * * alcoholics" (Section 2B of Ordinance 5, 1967) applies to the sixty-bed freestanding alcoholic center proposed by Bethesda. The resolution of this issue turns on the meanings of "institution" and "primarily."

Montgomery points to the definition of "institution" found originally in Ordinance 475 of 1959 (Section 31-26) and carried over into Chapter 151 of Montgomery's 1976 Code of Ordinances (Section 151.03[6]). This definition is: "A *building* occupied by a *non-profit* corporation or a *non-profit* establishment for public use [emphasis added]." We are not persuaded that this definition resolves the issue. In the first place, if it is accepted as applicable to the 1967 ordinance, then a *profit* corporation could construct the alcoholic center while a non-profit organization could not. In the second place, if "buildings" could not be used primarily for an alcoholic center, a hospital could convert a floor or a part of a floor to alcoholic care without violating Section 2B. In the third place, the words "buildings" and "institutions" as used in Ordinance 5, 1967 are clearly meant to have different meanings. "Buildings" appears three times in Section 2 (Sections 2A[e], [f] and [h]) and twice in Section 3 (Sections 3A and 3C), and in each

---

document filed by Bethesda that is specifically designated as a motion for summary judgment, the record is clear that the trial court deemed Bethesda's extensive memorandum, and its affidavit and multiple exhibits thereto, to serve the purpose and function of a motion for summary judgment. The court's final order specifically refers to "plaintiff's cross-motion for summary judgment." Montgomery raised no objection. Therefore, we consider Bethesda's filings as its cross-motion for summary judgment.

[4] We have found inadequate, unsatisfactory, and inappropriate the disposal by the trial courts of declaratory judgment actions by means of summary judgment under Civ. R. 56, when the judgment entry merely grants a motion for summary judgment and fails to construe the document or law and to declare the rights of the parties, contrary to R.C. Chapter 2721. *Waldeck* v. *North College Hill* (1985), 24 Ohio App. 3d 189; *Kramer* v. *West American Ins. Co.* (Oct. 6, 1982), Hamilton App. Nos. C-810829 and C-810891,

unreported. However, in the instant case, the trial court filed a memorandum setting forth its construction of Ordinance 5, 1967 and declaring the rights of the parties, and we deem that to be adequate for the technical fulfillment of the court's function under R.C. Chapter 2721.

[5] In general, the overruling of a motion for summary judgment is not a final appealable order, because that ruling is generally based on the existence of some genuine issue of material fact that requires trial of the issue or issues. In the instant case, however, there are no factual issues of any nature, the facts are all public facts about which there is no dispute, and we will consider the overruling of Bethesda's purported motion for summary judgment as an issue reviewable on appeal. In effect, we treat this case as having been decided by the trial court on the merits on the basis of agreed or stipulated facts, which is the procedure we believe should have been used.

instance, the contract demonstrates that it was intended to have its ordinary meaning of a multi-sided, enclosed structure. On the other hand, "institutions" is used only once, in Section 2B, leading to the logical conclusion that some other meaning was intended, because if the Montgomery Council had intended to mean "buildings" it would have used the word "buildings." In short, common sense tells us that the intent is clear that "buildings" and "institutions" shall have their common meanings.

In *Benjamin Rose Institute* v. *Myers* (1915), 92 Ohio St. 252, 263-264, the Supreme Court held that "institution" has two meanings:

" 'The term "institution" is sometimes used as descriptive of an *establishment,* or *place,* where the business or operations of a society or association is carried on; at other times it is used to designate the *organized body.*' " (Emphasis added.)

To the same effect is the decision in *Gerke* v. *Purcell* (1874), 25 Ohio St. 229, 244. These two meanings coincide with those found in Webster's Third New International Dictionary (1981) 1171, where it is defined as "an established society or corporation: an establishment or foundation esp. of a public character" (3b), and "a building, or buildings occupied or used by such organization" (3c). In our opinion, the preferred meaning of "institution" in Section 2B is the organization; that is, Bethesda is an "institution," and the alcoholic center will be just one of the buildings occupied and used by that institution. But if we construe "institution" as meaning the "establishment or place" where the activities take place, then Bethesda North Hospital is an "institution," because it is the complex of buildings used by Bethesda as a hospital. Under either meaning, "institution" is not limited to one isolated building.

"Primarily" means, in common usage, fundamentally or principally.

Webster's Third New International Dictionary (1981) 1800.

In our judgment, the prohibition of Section 2B of Ordinance 5, 1967 is against hospitals or other organizations that are principally used for "the care of drug addicts, feeble-minded, or insane, and alcoholics." The conjunctive "and" suggests the prohibited use must include treatment of alcoholism as one of the prohibited categories, and the disjunctive "or" suggests that the other category may be the treatment of either drug addicts, the feeble-minded or the insane. Neither Bethesda nor Bethesda North Hospital falls within that prohibition, because neither is "primarily for the care of * * * alcoholics." Judgment should have been granted in favor of Bethesda under Count I.

## IV

We are not persuaded that Bethesda was prejudiced by the trial court's ruling in favor of Montgomery under Count II.

In the first place, our final conclusion under Count I may be said to render it unnecessary to address Count II. Bethesda presented Count II as a viable claim only as an alternative to Count I; that is, if Montgomery's zoning ordinance were to be interpreted as prohibiting the construction of the alcoholic center, Bethesda contended, then that prohibition is ineffective because it conflicts with the state CON. Since we have ruled in Bethesda's favor on Count I (that the zoning ordinance does not stop the alcoholic center), the alternative remedy is of no consequence to Bethesda. In other words, even if the court erred under Count II, the error was not prejudicial to Bethesda.

In the second place, we find no direct conflict between the zoning ordinance and the state law. Under Section 3, Article XVIII of the Ohio Constitution, municipalities can adopt "such local police, sanitary and other similar regulations, *as are not in conflict with*

general laws [emphasis added]." The test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa. *Auxter* v. *Toledo* (1962), 173 Ohio St. 444 [20 O.O. 2d 71]; *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, paragraph two of the syllabus.

Assuming for purposes of disposing of the third and fourth assignments of error that Montgomery's zoning ordinance prohibits the alcoholic center, the local ordinance does not directly conflict with the Ohio provisions for the necessity of a CON before the construction could begin. The CON is needed under Ohio law as part of a national plan adopted by Congress. That body found that the national cost of health facilities was so great that equal access to quality health care at reasonable cost was in jeopardy because the massive infusion of federal funds into the health care system had contributed to inflationary increases in health costs to the extent that the costs had become uncontrollable. Congress' purpose was to adopt a national planning policy and to augment state planning for health services. National Health Planning and Resources Development Act of 1974, Section 300(k) *et seq.*, Title 42, U.S. Code. The Ohio statutes, R.C. 3702.51 *et seq.*, provide that a CON must, under penalty of fine, be first obtained before any major funds can be committed for capital expenditures or major medical equipment.

This is made applicable only to expenditures above a certain minimum (not less than $714,000 for capital expenditures, and not less that $400,000 for major medical equipment), with provisions for granting total exemptions from the necessity for a CON in certain instances. These provisions have nothing to do with the zoning laws controlling the location of health facilities within the local jurisdiction. In brief, the purpose and function of the state laws requiring a CON are entirely different from, and not in conflict with, the purpose and function of a municipality's zoning code.[6] There is no conflict.

The third and fourth assignments of error have no merit.

V

The trial court erred in ruling against Bethesda under Count I, and under the circumstances Bethesda is entitled to have judgment rendered in its favor as a matter of law.[7] We reverse the judgment below. Rendering the judgment that should have been rendered, we declare that the correct interpretation of Montgomery's Ordinance 5, 1967 does not prohibit the construction of the alcoholic center by Bethesda and that if Bethesda proceeds with that construction, it will not be in violation of Ordinance 5, 1967.

*Judgment reversed.*

SHANNON and DOAN, JJ., concur.

---

[6] Examples of the type of direct conflict in which the state law takes precedence are: (1) an ordinance that forbids prize money exceeding $1,200 during any single charitable bingo session and a statute allowing a maximum of $3,500 in such event, *Lorain* v. *Tomasic* (1979), 59 Ohio St. 2d 1 [13 O.O. 3d 1]; (2) an ordinance licensing the sale of intoxicating liquors upon payment of a fee to the municipality and the state statutes licensing the sale thereof, *Auxter* v. *Toledo* (1962), 173 Ohio St. 444 [20 O.O. 2d 71]; and (3) an ordinance limiting certain liquor licenses to one per 3,500 of the population and a statute limiting the same to one per 2,000 of the population, *State, ex rel. Cozart,* v. *Carran* (1937), 133 Ohio St. 50.

[7] There is no reason to remand this case for consideration of Count III, because that count, like Count II, was advanced only as an alternative to Count I. We have ruled that the zoning ordinance does not prohibit the construction and use of the alcoholic center, and the alternative claim that the prohibition is unconstitutional as applied to Bethesda has no viability.